Caldwell, Ch.
delivered the opinion of the Court.
The question in this case, is whether, under the circumstances, the disproportion between the real value of the land, (which the plaintiff, by his agent, agreed to sell to the defendant,) to the price to be paid for it, is a sufficient ground to refuse the specific performance of the contract. There is a material difference between a party who seeks to rescind and *77 one who seeks to enforce an agreement, as it requires much stronger evidence to effect the former, than will be sufficient to enable the defendant to resist the latter; and in applying either of the remedies, an important distinction must be observed between executory and executed contracts. It seems, from what is said by all elementary writers on this subject, that the specific performance of agreements is not an absolute right in the party, but a question of sound discretion in the Court; not that the exercise of this discretion is either arbitrary or capricious, but is, like all other judicial powers, dependant upon principle and precedent.
Story E. J. S. 769.
Sugden on Vendors, 189.
1 Had. Ch. 267.
Where there is a plain and adequate remedy at law on a contract, the Court of Equity will not enforce a specific execution of it. And there are certain qualities that every contract must possess before it can come within the class of cases entitled to'this extraordinary remedy: “generally it may be stated,” says Justice Story, “ that a Court of Equity‘ will decree specific performance when the contract is in writing, -is certain and fair in all its parts, and is for an adequate consideration, and is capable of being performed, and not otherwise;” and therefore if any of these essential ingredients be wanting, relief would not be granted : and he strengthens and illustrates the proposition by saying, “ the Court will not decree specific performance in cases of fraud, or of hard and unconscionable bargains, or where the decree would produce injustice, or compel the party to an illegal act, or where the performance has become impossible, and generally not in cases where it would be inequitable under all the circumstan-stances.” There is no difficulty in cases where one is induced to give an unreasonable price for an estate, by the fraud or gross misrepresentation of the vendor, or by an industrious concealment of a defect in the property, as equity will not only not compel the purchaser to perform the contract, but will at his instance rescind it; and Mr. Sugden adds, “when these circumstances do not appear, but the estate is a grossly inadequate consideration for the purchase money, equity will not relieve either party.”
“ Mere inadequacy of price,” says Mr. Maddock, “ unless it amounts to what is termed gross inadequacy, is not a ground for annulling an agreement, although executory, if the same appears to have been fairly entered into, and understood by the parties, and capable of being specifically performed ; still less does such inadequacy form a ground for rescinding an agreement executed; but under such circumstances the Court will not decree a specific performance of an executory agreement.”
But this principle does not depend for its support solely upon elementary authors, as it has been repeatedly recognized and sanctioned by the highest judicial authority. It is a *78 very ancient doctrine of this Court, that a contract which carries an equity to have it decreed in specie, ought to be without all objection. And we find several cases, as early as the time of Lord Harcourt, decided agreeably to the maxim, that equity will not carry hard or unreasonable agreements into execution: and a short time before that, in the case of the Marquis of Normandy and Lord Berkley, Lord Sommershed held that the Court would not carry agreements into execution unless the contract was reasonable and fair in every particular, because they cannot mitigate damages upon the circumstances of the case as a jury may do, but must decree the whole contract to be performed.
1736.
2 Ves. 304, 1750.
In Young v. Clark, Lord Macclesfield dismissed the bill brought for a specific performance of articles, as they appeared to him to be unreasonable and shameful, although there was no direct fraud proved. In Thompson v. Hurcourt the bill for the specific performance of a contract for stock, was dismissed, and the decree afterwards was affirmed in Parliament, on the ground of the great inequality of the agreement, to pay £9200 for that which was not worth more than £1000 at the time of performance: this was considered a hard case, though fairly made without fraud, surprise or ignorance. In 1726 the same doctrine was held in Squire v. Baker, when the Court refused to carry into execution an unreasonable agreement, but decreed that it be delivered to the party for whose benefit it was designed, that he might have an opportunity to make the most of it at law. Lord Talbot reasserted the distinction between rescinding the contract, and refusing the specific performance of it, in Savage v. Taylor, and left the plaintiff to pursue his remedy at law.
Lord Hardwicke repeatedly recognized and applied this principle in several cases during his long administration of Chancery; he held that in a case of a hard bargain that was executory only, the constant rule of the Court was not to carry it into execution ; in another case he says, “ nothing is more established in this Court than that any agreement of this kind ought to be certain, fair, and just in all its parts; if any of these ingredients are wanting in the case, this Court will not decree a specific performance; for it is in the discretion of the Court, whether they will decree a specific performance, because otherwise a decree might be made which would tend to the ruin of one party.” He reiterated these principles in Joynes v. Statham, the city of London v. Nash, and of Underwood v. Hitchcox, and expressly ruled, in Faine v. Brown, that without the other circumstances, “ the hardship alone of losing half of the purchase money,” if the contract were carried into execution, was sufficient to determine the discretion of the Court not to interfere, but to leave them to law. These two last cases were decided solely upon *79 the ground that inadequacy of price is sufficient to prevent the specific performance of an agreement to sell land.
2 Bro. C. G. 167, 1787. Vide Under-hill v. Hor— wood, 10 Ves. -20g Gilson v. Jayes, 6 Ves. Q,_ Donnell, 2 Sch. & Left „í^ í488: in Chan. 77.
10 Ves. 29.
John- c-R-23.
In Heathcote & others v. Paignon, the Master of the Rolls extended the doctrine of inadequacy so far as to set aside a contract solely on that ground, and his decision, on an appeal to the Chancellor, Lord Thurlow, was affirmed: although this decision may now be questioned, yet it indicates the great weight that inadequacy of price had in such cases, which certainly would have been much greater in resisting an application for the specific performance of such an agreement, than in rescinding it. A written agreement, in Day v. Newman, ivas the subject of a bill for specific performance, and a cross bill for the recission of the contract. Lo:d vanly dismissed both bills. The agreement was entered into for the purchase of an estate, at a price represented on the one hand, of the value of 9 or £10,0011, and on the other, of only £5000. The amount agreed upon was for £6000, and £14,000 at the death of a person 65 years old, making it a case of a contract for the purchase of an estate for £20,000 that was not worth more than £10,000 ; and although there was no circumstance of fraud or surprise, the Master of the Rolls thought that he ought not to decree a specific perfonyiance; yet as no advantage was taken, of necessity he was not warranted to decree the vendor to deliver up the contract: this case was therefore made to turn upon the question of the inadequacy of price alone, independent of any other fact..
The case of White v. Damon, cited in the Circuit decree, is one of a peculiar class, a purchase made at auction, which cannot be put on the same grounds as private agreements, and Lord Rosslyn dismissed the bill for specific performance, merely on account of the inadequate price given for the estate, viz : £1120, and it was worth £2000; and on a- rehearing before Lord Eldon, although the decree was affirmed upon a different ground, yet he said that he was inclined to say that a sale by auction, where there is no fraud, surprise, &c. cannot be set aside for a mere inadequacy of value.
In the case of Mortlock v. Butter, the question of inadequacy was again discussed, but Lord Eldon distinctly reserved his opinion upon that point, although he had held that the rule was perfectly settled and not to be questioned, that the Court is not bound to decree a specific performance in every case where it will not set aside the contract, nor to set aside every contract that it will not specifically perform. In addition to these cases, it was held in Osgood v. Franklin, Chancellor Kent, that there is a very important distinction, which runs through all the cases, between ordering a contract to be rescinded and decreeing a specific performance.— Though inadequacy of price is not a ground for decreeing an agreement to be delivered up or a rule rescinded (unless *80 its grosness amount to fraud) yet it may be sufficient for the Qom.(; refuse to enforce performance.
6 J 222°’ R’ i Bro. C. C. 179.
i Des. E. R, 250-
White y. Damon, 7 Yes. Bunws v Lock^icTves. 470. Newland on 4tli°Cox Repts
Cited in 2 Mad. Chan, 267,1733.
And in the subsequent case of Seymour v. Delaney and others, the same learned Chancellor, after an elaborate exam-¡nation of the English cases, came to the conclusion that inadequacy of price may, of itself, and without fraud or other ingredient, be sufficient to stay the application of the power of this Court, to enforce a specific performance of a private contract to sell land, although it may be true, as the Lord Chief Baron said in Griffith v. Spratley, that mere inadequacy of price, independant of other circumstances, is not sufficient to set aside the transaction. A similar view had been expressed by the Court of Equity, in this State, as early as 1792, in the case of Clitherall v. Ogilvie, where they refused to decree the specific performance of a contract for the sale of land, on the ground of the inadequacy of price, although there was no direct fraud or imposition in the purchaser, but the vendor was a very young man who had just arrived of age, was ignorant of the real value of his land, an<^ had acted ■ precipitately in concluding the contract, on being urged by the purchaser. Doubts have been occasionally cast upon this doctrine, and a few decisions may be found that apparently conflict with it, but the principle apPears to have been established by a strong current of well considered cases, and the circumstances of the case under consideration, instead of constituting it an exception, would seem to strengthen the defendant’s claim to its application.
In addition to the difficulty of applying mere abstract propositions to the practical purposes of life and the administration of justice, it has not been very distinctly defined what degree of inadequacy must exist, to authorize the Court to refuse the specific performance of an agreement.
The inadequacy must not be measured by grains, but it ought to be palpably disproportioned to the real- and market value of the property, so as to constitute a hard, unreasonable, and unconscionable contract; but it is not necessary that it should be so gross as to excite an exclamation or to indicate imposition, oppression or fraud, for this would be sufficient ground not only for refusing a specific performance, but for rescinding the contract.
Whatever wisdom there was in the civil law, prescribing a definite amount as the standard of a valid contract, that the price must exceed half the value of the property purchased, it may be doubted whether the application of such a rule, to set aside agreements, would not be inexpedient and impracticable in any, but especially in a commercial community ; it has never been adopted either in England or in this country, but it may well be considered as a fair standard of inadequa-Cyt Although in Muskeen v. Cole, where the sale was for *81 one-half of the worth of the estate, the Court relieved against the contract, and in another very early case the Chancellor expressed a wish that the rule of the civil law should be adopted, I can find no other case in which it has been applied in rescinding agreements ; but from the established principles of equity, and from the case quoted, there is no doubt that such inadequacy is sufficient to resist the specific performance of an executory contract. In this case the defendant was a young man who had arrived at the age of twenty-one years a few weeks before the agreement, and who, from the want of sagacity, advice, and experience, was unable to cope with the other party in the contract: it is manifest that his examination of the land was utterly insufficient to enable him to ascertain its value, which from the glowing description of the advantages that he might derive from the purchase, was no doubt greatly exaggerated in his imagination, and although the case does not come within the class of contracts with young heirs who are entitled to expectations, yet it approximates the principle in practice. The weight of evidence establishes such inadequacy of value, that the most liberal calculation cannot resist the conclusion that Kirton, (who, although apparently only the agent of Gasque, is the real party m interest,) bargained the land to the defendant for double its value, and probably for three or four times as much as it would bring if sold at auction. Under all the circumstances this Court will not enforce the specific performance of the contract, but will leave the plaintiff to pursue his remedy at law, where he may recover damages more adequate to the injury he has sustained, than the price he seeks to receive here is proportioned to the value of the property.
3 as'
It is therefore ordered and decreed that the circuit decree be reversed, and the plaintiff’s bill be dismissed.
Dunxin, Ch. and Dargan, Ch. concurred.
Johnston, Ch. absent at the hearing.

Decree reversed.